## NATHAN HIMES *vs.* BARNABAS A. HOWES.

An indenture, by which the child of a town pauper in Rhode Island is bound by the overseers of the poor of the town, conformably to the law of that State, as an apprentice to a citizen of this State, is not valid here, and does not constitute a bar to an action brought here, by the person so bound, to recover of the person, to whom he was bound, payment for labor done during the time for which he was bound.

INDEBITATUS ASSUMPSIT for work and labor. At the trial in the court of common pleas, before *Wells,* C. J. the defendant, after the plaintiff had given evidence of the work for which he claimed payment, introduced an indenture of apprenticeship, (the contents of which sufficiently appear in the opinion of the court,) by which the plaintiff was bound to him, as an apprentice, by an overseer of the poor of the

town of North Kingston in the State of Rhode Island ; and he contended that this indenture constituted a bar to this action, inasmuch as said work was done during the time for which the plaintiff was so bound to him.

The judge ruled that although the indenture was executed conformably to the law of Rhode Island, it constituted no bar to this action, unless the covenants therein contained had been fully kept by the defendant. The jury returned a verdict for the plaintiff, and the defendant alleged exceptions to the aforesaid ruling.

*Davis & C. Devens*, for the defendant.

*Grennell*, for the plaintiff.

The defendant's counsel cited, from the laws of Rhode Island, (ed. of 1822,) 274, a provision, empowering overseers of the poor to bind out, by deed indented or poll, to any citizen of that state, or of Massachusetts or Connecticut, as apprentices, to be instructed and employed in any lawful art, trade or mystery, any children whose parents are lawfully settled in and become chargeable to their town.

DEWEY, J. In defence to this action, which is indebitatus assumpsit for labors and services alleged to have been performed by the plaintiff, at the request and for the benefit of the defendant, it is contended that the services were wholly rendered under the stipulations contained in certain articles of apprenticeship, under the hands and seals of duly authorized contracting parties, dated November 21st 1831, and that the only remedy of the plaintiff is by an action upon that deed. Upon reference to this deed, it purports to be an indenture between Benjamin Smith, an overseer of the poor of the town of North Kingston, in the State of Rhode Island, and the defendant, a resident of Ashfield in this Commonwealth, in which it is recited " that the said Smith, in his capacity of sole overseer of the poor of said North Kingston, hath put and placed, and by these presents doth put out, Nathan Himes, [the plaintiff,] son of Palmer Himes, one of the poor of said town, an apprentice to said Barnabas A. Howes, [the defendant,] to learn the art, mystery and trade of a

husbandman, and after the manner of an apprentice, to serve from the day aforesaid, [November 21st 1831,] he being about eight years of age, until he shall be of the age of twenty one years," &c. The defendant, in said indenture, covenanted and agreed to instruct the plaintiff " in the art and calling of a husbandman, and to cause him to be taught to read, write and cipher, and to provide for him, during said term, meat, drink, lodging and clothing, fit and convenient for such an apprentice, and to furnish him with medical aid, when necessary, and at the expiration of said term, to discharge him, and give him, besides his ordinary clothing, a new and decent suit of clothes."

The nature and scope of this contract are very intelligible, and easily understood. Had it been entered into between the defendant and the overseers of the poor of any town within the limits of Massachusetts, and had the minor also been a resident of Massachusetts, and a proper subject for such indenture, such indenture would have been obligatory upon the parties, and might have constituted a good defence to an action of assumpsit for the services of the plaintiff. The inquiry then arises as to the validity and effect of this indenture made by an overseer of the poor in the State of Rhode Island, binding out to service one of its own paupers, or the son of a pauper, to a resident of Massachusetts, known and described as such in the indenture, and obviously intended to authorize the removal of the minor from the State of Rhode Island to the State of Massachusetts. Is such an indenture valid, and to be enforced in Massachusetts ? We think clearly not. The very nature of the trust, the source from which the authority to bind out is derived, the duties and obligations resulting from such contract, and the proper supervision of it by the appropriate tribunals, all tend to one view of this question; and clearly show it to be a local indenture, and one that must have its force and effect, as a statutory binding out to service, only within the territorial limits of Rhode Island.

It is said, and truly said, that the statute of Rhode Island

authorizes the overseers of the poor to bind out to service the minor children of paupers, resident in Rhode Island, to persons resident in Massachusetts. But it is for Massachusetts, and not for Rhode Island, to declare whether such a statute shall have any force and effect in Massachusetts, beyond that of a local provision to be executed within the territorial limits of Rhode Island. It is difficult to perceive how the right of supervision, so plainly required by the statute of Rhode Island, can be exercised, in this Commonwealth, over our citizens resident here. Great practical difficulties would arise in enforcing the provisions of this statute in Massachusetts. But aside from this, considerations of higher importance press upon us, when we are called upon to decide whether this statute can have validity here, authorizing, as it does, a contract to be made, by the overseers of the poor of a town in Rhode Island, with a citizen of Massachusetts, having the avowed purpose of transferring the residence of a minor son of a pauper from Rhode Island to Massachusetts. There are objections to giving effect to such an indenture, that seem to us insuperable. To say nothing of the rights of the minor, which would be violated by a forced removal from the State in which he had his domicil to another State, and, as the case might be, to a State at the other extremity of the Union — for if it be competent for the legislature of Rhode Island to authorize the overseers of the poor in that State to bind out a minor, an inhabitant of that State, to a master resident in Massachusetts, with authority compulsorily to remove him to Massachusetts, it is equally within the legislative authority of Rhode Island to authorize the binding out of such minor to a resident of Arkansas — public policy, and the security of our own Commonwealth, would lead us to pause and gravely examine the subject, before we gave legal effect here to a course of legislation in another State, which might flood this Commonwealth with the pauper children of a sister State.

As it seems to us, statutes authorizing overseers of the poor to bind out minors, by indenture, who are the children

of paupers, must, from their nature, be of a local character and have effect as police regulations, to be wholly administered within the limits of the State enacting them; that to render such binding to service a valid contract, the parties must all be residents within the State; or at least that the indenture must be one for services to be performed within the State in which it is made.

The indenture, in the case before us, was not binding upon the minor. The court of common pleas, therefore, properly ruled that it constituted no bar to an action of assumpsit for the services of the plaintiff, upon the ground taken by the defendant, that the plaintiff had performed these services under a deed. This is the only ruling to which the defendant can except; and the plaintiff only was prejudiced by the further ruling, which was, substantially, that if the covenants on the part of the defendant had been well and truly performed, that might constitute a good defence to this action upon the merits. Whether this ruling was too favorable to the defendant, it is unnecessary, for the reason just stated, to decide. There are many cases where the principle would be properly applied, that although the contract was invalid in law, and incapable of being enforced, yet the parties having acted under it, it may be shown in evidence, as explanatory of the relation of the parties, and of their intended arrangements; and it may, in some aspects, materially affect the case. The defendant had here the benefit of this indenture, so far as it prescribed the duties and liabilities of the parties, and the jury, under the instructions of the court, could have found a verdict for the plaintiff only upon the ground that the defendant had not fulfilled all the stipulations on his part, which were embraced in the indenture, and which he covenanted to perform.

Upon the whole case, we see no reason to disturb the verdict.                *Exceptions overruled.*